My name is Mike Webb and this court has already spoken as to the constitutionality of this statute more than 21 years ago in Acorn v. Phoenix. The city, in specific reliance on Acorn v. Phoenix, some seven months after Acorn was decided, passed a law that was identical to the Phoenix statute. Are you overreaching just a little bit? It's not exactly identical, is it? Well, word for word, the first sentence was exactly the same. The only provision that was added was specifically to include the sidewalk because that was within the definition of street or highway under the California Vehicle Code. But the reason that's identical is Phoenix specifically said, in Acorn v. Phoenix, in two locations, in footnote 9 and elsewhere in the statute, pointed out that the district court had assumed that the sidewalk was part of the Phoenix ordinance. And that they, the district, the Ninth Circuit, was also assuming that for purposes of that decision that the sidewalk was part of it. They were identical. Arizona law is the same as California law in terms of within the definition of street or highway, the sidewalk is considered part of it. So if anything, we were redundant to give greater notice. But it was, in fact, identical. When you see the memorandum from the then city attorney to the mayor and council, Acorn was decided September 1986. In March of 1987, you have the memorandum, 20 years before the litigation, not as part of any litigation strategy, proposing to the mayor and council that they adopt this ordinance and saying, and specifically the city attorney said, it is identical to a statute recently upheld by the Ninth Circuit. So, in fact, it is that statute. It was word for word that first sentence. It gave greater notice that sidewalk is part of the highway, but that's exactly what the Acorn. And Section B? Section B was added later. And that, they made some non-substantive changes. Instead of saying no person shall stand, it was it shall be unlawful. When they amended the statute later to add Section B, that's the only substantive difference between the two. That wasn't the first provision, but I think they just decided in terms of being fair to not only go, you know, prescribe the law as to one of the two parties to the solicitation. That's the one area where it differs now from Acorn, but it didn't differ initially. And that's the question. Why was this evaluated as political speech as opposed to commercial speech? Your Honor, I can't answer that question. I mean, I think that. What do you think it is? Political or commercial? Political speech, oratory, religious sermons, artistic expression, as opposed to commercial speech. I would think it's clearly closer to commercial speech. So why did you never argue that? Well, I think that there is, when you look at the, when you look at the ordinance as a whole, it's not just a day laborer statute applies not only to solicitation of employment, it's also solicitation of business, which clearly is commercial speech, but it's also solicitation of donations. And if that's the solicitation of donations from a political group, it might not be prescribed merely as commercial speech. What we argued was that the Ninth Circuit had held this case was constitutional. The city was not pushing the envelope here. The city was looking to the Ninth Circuit for guidance. And if sorry decisis is to mean anything, when the Ninth Circuit says this law on its face, which is what the Acorn case reads, is constitutional, the city needs to be able to rely on that. The court, the district court distinguished it, tried to distinguish it in two ways. First is the sidewalk issue. And, again, if you look at footnote, if you look at footnote nine, as the ordinance prohibits solicitation from occupants of vehicles when the solicitor stands on a street or highway, it might be argued that solicitation from vehicles while standing on the sidewalk is not prohibited by the ordinance. However, neither party has read the ordinance so narrowly, and the district court assumes such conduct would also be prescribed. For purposes of this appeal, we assume that the ordinance prohibits all solicitations from the occupants of vehicles by persons standing in or along the street or highway. And later on, when also ruling that it was not overbroad, the they accepted, they accepted the plaintiff's assertion that the word street as used in the ordinance should be broadly interpreted to include activities conducted on the sidewalks. So clearly. I just want to go back to Judge Bisling. So the city has never, in this litigation, taken the position that the speech that it's regulating is commercial speech? I can't, Your Honor. I don't recall from the initial one if the city did that or not. I know that was not the. But if you did that, you dropped it a long time ago. You certainly didn't argue it to us. That is correct, Your Honor. And I think, again, because of the fact that the statute doesn't just look at the day labor issue. It also looks at the solicitation for funds. And in that case, that may not be prescribed as commercial. I'm not sure what difference that would make. I mean, I haven't really looked at that issue because you didn't raise it, and it was only brought up by an amicus brief. But thank you on that. The sidewalk issue is somewhat different in the Phoenix case, right, because that involved this whole tagging situation where it was kind of irrelevant where they were under the Phoenix statute. What they were going after was this specific, I'm not sure I fully understand what the tagging was where the person would go out to the car and try to do a transaction with the driver of the car and then give them a certificate if they had given them money. Is that exactly what was going on there? It was a solicitation for funds. But, again, this court held later on, specifically in looking at whether it was overbroad, they ruled that on its face it was not, and again accepted the plaintiff's assertion that the ordinance should be broadly interpreted to include activities conducted on sidewalks. When you look at the three activities prescribed, they all have impact on traffic safety. And, in fact, you could argue that the tagging would be the least, had the least impact on traffic safety because there they're waiting until traffic was already stopped. When you have the other things that this prescribes, selling merchandise from the medium, that sort of thing, and you look at how the Supreme Court has talked about the nature of solicitation, that it's a face-to-face conversation and they've talked about the need to get your wallet out, fumble for funds, that sort of thing. When you're making a donation, there's most likely not any change. When you're purchasing merchandise, flowers or oranges or whatever, there may, in fact, be changes in negotiations sometimes for price. And here you have the first, what is the nature of the employment that's being offered? How many people are the potential employer looking for? What is the price? Where are they going to go? And then physically getting into most usually a truck. That, again, has, I think, the greatest impact of the three types of activities that this ordinance prescribes. You know, clearly there are other things that a person could do. The Acorn case makes clear that its statute and our statute don't prescribe passing out leaflets. You know, that you could pass out a leaflet to the car saying, please park legally if you're looking for workers and come talk to us. You can solicit from passengers, I mean, from pedestrians on the street. What this is is a proper restriction only on solicitation of the occupants of vehicles. And, again, it was based directly on that Phoenix statute so that the city could, without running afoul of any. That seems to go to your, you know, like a good faith argument that, you know, more than, I mean, if you look at the statute itself, the city's goal is to not disrupt traffic flow and to keep traffic and keep people safe who are on city streets and in the vehicles and not have people walking onto the street. Isn't that basically your goal? The goal is to stop the traffic disruption, to have safety. There are also the secondary concerns. When the court, before that was talking about the language, the language from Phoenix reads, no person shall stand on a street or highway and solicit or attempt to solicit employment, business, or contributions from the occupants of any vehicle. Our statute is originally adopted in 1987, read, no person shall stand on a street or highway and solicit or attempt to solicit employment, business, or contributions from the occupants of any vehicle. Word for word identical. The second section talks about that the defined street, consistent with California law, consistent to what explicitly in the ACORN decision, this court said it was assuming street contained. The only other change in 89, the way it reads now, is instead of saying no person shall stand, they changed it to it shall be unlawful for any person to stand. The rest of that first section is, again, identical to the Phoenix statute, and then they added the B section so that it also applied to the employer. And so it goes, Your Honor, more to good faith. It goes to what can the city do if it can't rely on specific rulings from this court. There are a lot of different ways cities have. Do we rule to the contrary in ACLU too? No, Your Honor. As a matter of fact, ACLU specifically pointed with approval to the ACORN rationale and distinguished between an ordinance like ours that prohibits the act of solicitation as opposed to passing out leaflets where the person would have to look at, the law enforcement officer would have to look at the content of the leaflet to determine whether or not it was a solicitation. It's a very different thing. ACLU specifically ---- Are you arguing now that this only prohibits conduct? It only prohibits solicitation. Solicitation is protected by the First Amendment in speech. Solicitation, well, but again, solicitation as the act of solicitation, the courts have from Heffron to Kikinda, the street. You can regulate it. You can regulate it. Oh, yes, Your Honor. I'm sorry. And that's ---- You can regulate it. You can't prohibit it. Correct, Your Honor. I'm sorry. It's what I meant to say. It's prohibited in terms of or regulated in terms of the time, place and manner only from the occupants of vehicles. It does not stop somebody from passing out leaflets as ACORN specifically said. Since it's the same statute, all the things that ACORN determined the Phoenix statute allowed are certainly things that are allowed within the scope of our statute. ACLU specifically ---- The court specifically in ACLU reaffirmed the viability and the continued precedential value of the ACORN decision. Again, most recently in January, as we cited in our letter brief, this court again in Berger v. Seattle cited to ACORN v. Phoenix with approval. The district court below in the first arguments made a statement that the court believed that ACORN v. City of Phoenix had aged. And that clearly is not the case. ACLU cited it. This court cited in ACLU, cited in Berger v. Seattle and cited it in a Long Island case on July 15th. And so the ACORN case is still precedent. Actually, when ACLU cited it, it substantially narrowed it. I mean, it did. It said holding that a ban on in-hand solicitation from automobiles that does not cover distribution of literature requesting contributions is content neutral. And what they held in ACLU too was that words of solicitation, a ban on in-hand solicitation in that case, which was actually based on one subset of communication solicitation, was not content neutral. So it kind of narrowed. I mean, the two cases to me are barely reconcilable. You have a smile on your face. But the way ACLU too reconciled the case was by narrowing ACORN. Respectfully, it didn't narrow ACORN at all. ACORN said all those things. Keep in mind, ACLU in the Las Vegas law, it was in a pedestrian mall where there were no vehicle or traffic safety issues. And the solicitation ban included a ban on the distribution of literature. And that part of the ban was content-based. Because the — Doesn't this statute cover the distribution of literature on its — No, Your Honor. Absolutely. This is a facial challenge, right? Your Honor, it is never — I'm sorry. I apologize. It's a facial challenge. And the statute on its face says, it shall be unlawful for a person to stand and solicit or attempt to solicit. And then it says the kind of solicitation that's unlawful, employment, business, contributions from an occupant of a motor vehicle. So doesn't it cover distribution of literature? No, Your Honor. And again, ACORN specifically covered that. It specifically said it does not ban the distribution of literature. So not only has it not been applied that way in Redondo, but to address your comment, it couldn't be — This is a facial challenge. My point is it couldn't be because we adopted the Phoenix statute. This Court has given clear instructions that that statute does not ban — Why don't you change the statute to be more narrow and say what you mean it to say? Because we — well, I guess the comment when I was smiling is in terms of, rather than trying to look into the future and read this Court's mind, we adopted what this Court specifically said was constitutional.  And part of — And the rest of your time on this is ACORN. Is there any other argument you want to make? Well, Your Honor, to me that is the — And I — as we move off of ACORN, I had a question. A lot of time was spent in the briefs arguing about whether the plaintiffs had standing. Yes, Your Honor. And I guess my question to you is if even — if one of the plaintiffs has standing, does that authorize us to go forward and analyze the constitutional issue? So if we found one plaintiff did and one plaintiff did not. If you found one of the plaintiffs did, I believe it would allow you to go forward. Again, the plaintiffs have the burden of showing standing given the district court's overruling of the magistrate. And I would just be repeating the briefs, but I don't think under these factual circumstances they've established standing. You have one group that really there is no — there is insufficient proof that they actually exist as a group. And you have a second that is closer to the standard of what an amicus is, and that would be the National Day Laborers Organization Network. With I have about three minutes left, unless there are any questions, I'd like to reserve the rest of my time. Your Honor, may I please the Court? My name is Philip Huang. I'd like to begin with addressing two of the topics I've been specifically raising. Wouldn't you say this is really commercial speech that we're talking about? It is not. Why is that? The SOC case is quite instructive. The ban on SOC was about off-premises canvassing in the city of — in the county of Clark, which is outside of Las Vegas. And in the SOC decision, the county of — the Clark County was attempting to write its ordinance to cover just commercial canvassing. Specifically, canvassing had been defined as distribution of materials that contained advertisements or that sought to propose a commercial transaction, which seems to fit within — squarely within the definition of commercial speech. And the actual plaintiffs in that case were, you know, seeking to advertise their adult businesses, clearly commercial speech. Yet what the Court found in that case was that the speech as written nevertheless included things such as newspapers, because newspapers contain commercial advertisements. And because it extended beyond purely commercial speech, the Court said the appropriate test was the reasonable time, place, manner test, not the commercial speech test the district court had used in that case. So we believe the SOC fully answers that question. And we're happy to provide any additional briefing if the Court is concerned about the commercial speech issue. On the — Don't you think they've waived it? I mean, they never argued it. Yes, that is correct. Absolutely. They've waived the issue. It wasn't raised in their opening brief. It wasn't with — before Judge Marshall. They've clearly waived that issue. On the ACORN issue, there are two material distinctions between this ordinance and ACORN and the ordinance they passed here. One critical distinction was, as pointed out, subsection B of the ordinance. And what subsection B of the ordinance does is to say you can't stop, stand, or park your car if it's for a prescribed speech purpose. So what subsection B does is it makes clear to the extent there was any ambiguity. This ordinance applies to parked vehicles, where there is no traffic rationale for regulating speech, consensual conversations between a person on the sidewalk and a parked vehicle. Can you slow down? I'm sorry. I'm trying to follow the argument here. I'm sorry about that. You're saying that the park — because it refers to parked vehicles, you mean vehicles that are driving down the street, get waived at, stop their car, and because now they're a parked vehicle, it doesn't apply? Is that what you're saying? Actually, what I'm saying is that it specifically makes it unlawful to park your vehicle for a prescribed purpose of attempting to hire or hiring someone from that parked vehicle. And so when Section A is read in conjunction with Section B, it becomes clear that the ordinance as a whole applies to solicitation directed at parked vehicles, which was clearly not at issue in the ACORN decision. And it makes all the difference because it calls into question the traffic rationale that the city is advancing as a justification for its ordinance. And in the FODE case, the court dealt with a similar type of provision, where you had an ordinance that prescribed you from parking your car if the intent of parking your car was in such a way that a sign would be visible. And the court in discussing that provision said, we don't see the traffic rationale of regulating parked cars. Consistent with FODE, that's one of the reasons why this case is materially different from ACORN. The second material difference is the sidewalk provision. Now, the city does argue in its briefs that the ACORN decision discussed sidewalks and assumed for purposes of argument that sidewalks were covered. But what's critically important is in the ACORN decision, the only overbreadth argument that had been raised by ACORN was this. We believe what they had argued was we believe that we can't solicit on sidewalks and direct that solicitation at parades or demonstrations in the street. And this court, in evaluating their argument, didn't really buy the argument because it said, well, the problem isn't a solicitation directed at a parade or a demonstration, because presumably in a parade or demonstration, there actually isn't a vehicle involved, except in the very limited situation involving floats. And the court only said that we don't think that particular example is significant. The court never addressed the kinds of arguments that we deal with in this case, where you have sidewalk solicitation directed at parked vehicles. It includes things such as dropping a leaflet on a parked car, inviting someone to a political fundraiser. Just yesterday, I was reading an article in the Wall Street Journal, which talked about one of the political campaigns that was seeking to raise funds aggressively. And one of the strategies they described was having their supporters stand on public street corners with signs. And they were not seeking cash donations at that moment. In this modern age, it's all about online donations, where there's no immediate impact on traffic. And that's another reason that ACORN perhaps made sense several decades ago, where the solicitation that was occurring was requests for cash on hand. But in this modern day, it's clear that the types of solicitations that we're seeing involve requests for those online donations. Yet this ordinance on its face would prohibit a charitable organization, an advocacy organization, for example, from passing out flyers, which happen to say, you can go check out our website at www.advocacyorganization.com and provide support by donating online. I guess I don't understand that, because ACORN specifically interpreted the ordinance as allowing providing the individuals to provide a document that would say you can contribute to us later. So if that's the authoritative interpretation of the ordinance, why wouldn't that apply here? Because the city in the proceedings below adopted quite a different interpretation. At a hearing before Judge Marshall, for example, as noted in a footnote in our brief, the city argued that the ordinance actually applied to things such as signs, written materials, written requests for solicitation. And I take it that the city would have an objection as well to a day laborer passing out a flyer as well, which covered materials, because the city's position is clear. They believe that day laborers need to stand behind the sidewalk. And in trying to understand what that term meant, I reviewed the brief a little bit more carefully. Their position is you have to stand on private property belonging to third parties. The city's council just said that they didn't believe that the ordinance would prevent distributing information. Are you saying that they've changed their position, that the position that we're hearing now is different than it's been in the past? I believe that that position is inconsistent. It's certainly not contained in the actual language of the ordinance. There are no written instructions which state that. And in a First Amendment overbreadth context, one of the concerns is that overly broad statutes chill speech, because when a resident of Redondo Beach reads the statute, what they see is the broad language. And that's what matters. An ACORN rejected that facial overbreadth for this similar statute. I guess I'm not understanding why that's not applicable to the same words in this statute. Because the ACORN court dealt with only a specific argument. And they made very clear in the opinion that the only overbreadth argument that they were entertaining was this one involving standing on sidewalks and directing the conversation at demonstrations and marches. What the ACORN court did not do was to immunize the statute indefinitely throughout history for arguments that had never been raised. And if the court had done that, that would be quite disturbing, because there were plenty of parties who did not participate in the ACORN decision. They certainly didn't have the ability to speak out and help shape what the arguments were in the case. And so the only thing the decision stands for is exactly what it says. And it rejected that specific argument, yet dealt with none of the arguments that have been contained in our brief. So your view is if a court upholds a statute as being constitutional, it's only as good as that one challenge, and so you could keep coming back with different theories of First Amendment violations, is that? Well, yes. And it would depend on the actual type of challenge that's brought and the specific arguments that were advanced in that challenge. But even assuming for purposes of argument that ACORN stood for what it stood, as I pointed out, there were these two critical differences between the ACORN ordinance and the ordinance that we have at issue, the parked car issue, so that it clearly applies to parked cars, and that was clearly not discussed in the ACORN decision, as well as the sidewalk issue, which we think makes all the difference. May I ask you a question about standing? Yes. There would be a question. If we assume that everyday labor, every member of the committee, was seeking to solicit unlawful employment, and now I know that there's no information on that, and so their activities were unlawful under some other statute, would they nevertheless have standing to challenge this? Now, I know you cite RAB, but that case didn't specifically address that issue. Is there any case that would hold that if the activities are unlawful under some other statute, they can then challenge a statute that makes their, with a First Amendment question? Yes. I believe that the appropriate analysis is contained in cases such as Young v. City of Simi Valley and all the cases that are cited therein, which say that in the limited, in the special First Amendment context, even if the particular speech of the plaintiff in question is not protected by the First Amendment, they nevertheless have over-standing, assuming that they can demonstrate they suffered an actual injury and have a direct stake, which is exactly what we have here, because there's no dispute that members of plaintiff's organizations were actually arrested under the specific ordinance for engaging in speech. So in that case, was the plaintiff's behavior unlawful under some other statute? I believe in cases in which the Court has discussed this issue, for example, let's say you have an individual engaged in obscenity, which is clearly not protected by the First Amendment. That individual would nevertheless have over-breadth standing to raise a challenge, assuming they've met the basic standing requirements. And we believe that the arguments they're raising about the lawfulness or unlawfulness of the activities are, first of all, incorrect as a matter of federal law in terms of how you interpret immigration law. But more importantly, it's beside the point. Because in RIV, as the Court, as Justice Scalia specifically had acknowledged, the conduct in question, cross-burning, clearly violated any number of other laws. And yet Justice Scalia never questioned the ability of the particular plaintiff in that question to bring the case. There was never any remote question of outstanding. That's my problem. There wasn't any remote question. And so that issue wasn't directly addressed in the opinion. And I wanted to see if there was another one or it was an issue of first impression. But the speech at issue doesn't violate any law. I mean, what law does it violate? That's correct. Because a day laborer saying, hire me, is actually not committing any violations of federal law. And the city strains to sort of try to read federal law in such a way that they would somehow construe that at the end of the day to be a violation of federal law. It simply is not. And if you look at the actual provisions that the city is citing to, it becomes abundantly clear that their speech violates no other law. And that is an independent reason why the city's argument is without merit on that point. It is worth noting that Judge Marshall correctly read the statute. Basically, Judge Marshall's philosophy was the statute means what it says. And she applied the statute as written, given that this was a facial challenge, and found that this was a sweeping statute which covered individuals on sidewalks performing classically protected activities such as leafleting, displaying large banners or signs that were directed at willing listeners in parked vehicles. And even when the subject matter of the solicitation was a request for some solicitation in the immediate far future, such as donate online or merely support our organization, and the court felt that the traffic rationales that were being advanced by the city just didn't square with the actual language that the city had adopted. And that was the problem, was that it was an overbroad statute. And we believe that our position is that the statute, that Judge Marshall did not commit legal errors certainly on that. Her analysis of the overbreadth of the statute, and nothing I've heard today or nothing I've reviewed in the briefs, leads us to believe any differently, that somehow the analysis has changed. It's overbroad because it includes parked cars? Is that what you're saying? That is one of the examples of overbreadth, yes. Because it applies to the occupant of any vehicle. And there is simply no construction that would make sense of how it can be an occupant of any vehicle if it was only a vehicle that was moving. The city makes this argument that, well, we interpret the statute as applying only to the occupants of – I mean, it's only to vehicles that stop suddenly in traffic, but the plain language of the statute, if you would not allow such an – If you just eliminated the words park or stand in the statute, it would read, it should be unlawful for any person to stop a motor vehicle on a street or highway from which any occupant attempts to hire, hires, et cetera. The problem is on subsection A of any vehicle, the occupant of any vehicle. You would have to be inserting a lot of language that any vehicle just – it contradicts to suggest that you can solicit the occupant of any vehicle, but any vehicle only means a car that's actually moving and stops in the middle of traffic. The ACORN ordinance also prohibits solicitation from the occupants of any vehicle. It's the same language. It's just the B is just the reciprocal that that occupant of any vehicle is also liable. Well, what B does is to clarify that this does apply to parked vehicles. I mean, it certainly wasn't an issue that was raised in the ACORN court, and to the extent there was any ambiguity when the court was reviewing the statute, it's abundantly clear that this statute, as is, applies to parked vehicles. I did want to just make the point that this is a speech restriction, not a conduct restriction. There are any other number of laws that the city could seek to – currently on the books that the city could enforce or perhaps pass new laws that deal appropriately with conduct. For example, this is not a law about individuals running into traffic and blocking traffic. There actually exist California Vehicle Code provisions which prohibit that. Rather, an individual is allowed to stand in the middle of traffic and to solicit a signature for a ballot petition. But what that person then can't say is, oh, and you can check out our website if you want to support our cause online. That's what the statute does is it regulates speech, not conduct. And as Justice Scalia said in the RAV decision, there are any number of tools that cities have at their disposal, but they can't throw the First Amendment on the fire, and that's the problem that the city has taken here. They could actually have the same statute without the solicitation and stop the very same behavior. Yes. If the words – if you did not seek to actually regulate the solicitation, the speech, then arguably then it would be more of a conduct-based restriction where the analysis would be entirely different. But that is not what we have in front of us. I'm concerned with the conflict between – the seeming conflict between ACLU and ACORN as to whether or not this type of ordinance is content neutral. It seems as though the earlier – the 19 – when was it? I'm not looking at the print right now. The 1986 panel found it to be content neutral, as did Judge Marshall, but that ACLU too found sort of the very same type of ordinance not to be content neutral. Well, as an initial matter, this Court can simply affirm on any ground that's supported by the record. So if the Court so chooses, the Court could find that Judge Marshall correctly applied the law regarding overbreath. On the specific issue, though, of whether the ordinance in question is content-based, we provided several examples of a brief about how is an officer to know whether the solicitation is on a prescribed topic or a topic that's not allowed, and the city has not been able to answer that question satisfactorily. How is an officer to know whether the particular conversation relates to employment or business, or that a flyer that's being distributed relates to employment, business, or contributions, other than by reading and evaluating the content of the flyer, the content of the conversation. Literally, officers standing by, listening to everything that comes out of an individual's mouth that's standing on the sidewalk to determine whether or not the ordinance is even implicated. And that's a hallmark of a content-based restriction. So we believe fully consistent with the ACLU-2 decision, this ordinance should be deemed as a content-based restriction. But wouldn't that just be a defense if someone was charged with this crime and went to trial and the person said, no, I wasn't soliciting business, I was trying to campaign for my favorite candidate, and then it would be a question of fact for the Court to determine whether they're guilty or not guilty of this ordinance, of violating the ordinance. Well, it may or may not be an appropriate defense in a particular criminal action, but what does seem clear from the ACLU-2 decision is that an organization or individuals can bring a facial challenge to an ordinance. And as part of that analysis, for First Amendment purposes, ask these questions about how is an officer to enforce this ordinance other than to read and evaluate the content of what's contained on those flyers, those particular conversations in question. And what seems clear in this case is that the city is saying, well, if it looks like a day laborer, chances are they're soliciting work. And they've actually made clear that day laborers need to stand behind the sidewalk on private property. And in actually charging day laborers under this ordinance, they got stay-away orders, which said the particular day laborers in question couldn't even go to those public corners. It wasn't about, you know, going to the corner for the prescribed purposes in the statute. It's stay away. You have to get off the public sidewalk. And that's allegedly in the record here 60 to 70 on some occasions. And you say there's other ways of dealing with that. They can enforce the loitering laws or whatever else. What if it got up to 150? I mean, could the city, anything the city could ever do about this? Or do they just have to bring the whole law enforcement out there and look for people throwing garbage on the ground? They couldn't enact an ordinance that said you can't do this? Well, the city can actually regulate conduct. And there are many variations of the different kinds of conduct ordinances that would actually address the specific content here. But on the city's part. LA City, for example, has an ordinance that says you need a permit if more than ten people are gathering or they have a number. We've had that ordinance in front of us before. Yes, such as the Santa Monica Food Not Bombs case, which described various ways in which you can actually regulate sidewalks and roadways in a manner that would be consistent with the First Amendment. But you can't do a flat band. And that's the problem here is that the city is a citywide band, not limited to particular intersections, 24 hours a day, seven days a week. It applies to every sidewalk throughout the city of Redondo Beach, even when the solicitation is directed at the willing listener of a parked vehicle. And we believe that under the precedent of this court, it's quite clear that that particular statute would be unconstitutional on its face. I think I'm just about out of time, so thank you very much. Yes, eight seconds left if you want to. Thank you very much. Two things based on the comments. One is, again, specifically in ACORN, the court ruled it imposes no restriction on other forms of communication, such as oral advocacy or distribution of literature, even to occupants of vehicles. Thus, the ordinance is properly analyzed as a form of time, place and manner regulation. So where counsel says that you have to look at flyers to determine the content, that's not true. ACORN has made clear, this court has made clear, that when you have this statute, it only applies to the act of solicitation. And, again, that's the language that this court used in Las Vegas to distinguish the Las Vegas statute when they had to look at the content of the flyers versus this type of communication. And the Supreme Court has made clear in Heffron and Kikinda that the nature of solicitation is why you use a different type of analysis. I would say that counsel was just in error in terms of talking about the over-breath language, and specifically that ACORN didn't limit it factually the way counsel argued. And he talked about the ordinance does not participate, does not prohibit all solicitation even in the street. It prohibits only solicitation in the streets, in quotes, from the occupants of any vehicles. It is not the location of the solicitation that is the primary focus of the ordinance, but rather the targets, occupants of vehicles. And, again, it's the same situation here. And I know that I'm focusing on ACORN, but from the city's perspective, we looked in the Ninth Circuit for analysis. This case, you know, the district court originally felt the case had aged. It hasn't. It's been cited three times by this court in the last 12 months. It is the same statute. And if we were to try and define it any differently, you know, we could be criticized for, you know, erring as opposed to what the court has said. We passed the exact ordinance that the court has indicated is constitutional. And with that, unless there are any questions, I'll get to you. Never mind. You're leaving 33 seconds. I was going to say I could do my shadow puppets, but I realized where I was. Can I just say I appreciate how well prepared both counsel were and how articulate you were? I appreciate that. Thank you very much. All right. The session of the court is adjourned.
judges: Wardlaw, Ikuta, Beistline